## Coleman *et al. versus* Chadwick.

## Chadwick *versus* Coleman *et al.*

1. Of natural right the surface land is entitled to support from the strata below.

2. When the owner of the whole fee grants the minerals, reserving the surface, his grantee is entitled only to so much of the minerals as he can get without injury to the surface.

3. A custom contrary to such right would not be reasonable and therefore would be invalid.

4. A grant of minerals and all privileges necessary for the convenient working, &c., of coal, and the rights "incident or usually appertenant to working and using coal mines," does not affect the grantor's right to a surface support.

5. The loss of springs to the owner of the surface by reason of the ordinary working of the mines, does not render the owner of the minerals liable for damages.

6. Horner *v.* Watson, 29 P. F. Smith 251; Jones *v.* Wagner, 16 P. F. Smith 429, adhered to.

November 11th 1875.   Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Writs of error to the District Court of *Allegheny county:* Of October and November Term 1874, No. 221 and 236.

This was an action on the case commenced April 19th 1872, by James M. Chadwick against William Coleman, Frank Rahm, John S. Slagle and William Varnum, partners, trading as Coleman, Rahm & Co.

The plaintiff declared that he was the owner of a tract of sixteen acres of land in Penn township, Allegheny county, on which he with his family resided; that the defendants were possessed of a coal mine underlying the said tract of land; that it was their duty in working the mine to leave sufficient pillars, ribs, supports, &c., so as to prevent the superincumbent surface of the said tract from falling in, or to have set up sufficient posts to support and protect the surface and prevent it from falling in; that the defendants mined the coal in so unskilful, negligent and careless a manner as to cause the surface of the tract overlying the mine " to cave in, crack, break and thereby destroy the buildings, orchards, springs of water, &c., and diverted the springs and streams of water from their natural channel, &c., so that the plaintiff was not only disturbed in his possession, use, &c., of the tract, but injured in his occupation as farmer and fruit-raiser."

The second count averred that the defendants took away the coal, without leaving proper ribs and supports or putting up the necessary posts for support; that in consequence the surface fell down, making cracks in plaintiff's land, and injuring his dwelling-house, his fences, fruit trees, &c., and diverting the springs from their natural channel.

30 P. F. SMITH—6

The tract of land, surface and minerals beneath, on the 4th of October 1853, belonged to Thomas Chadwick, who, on that day, conveyed to the firm of Coleman, Hailman & Co., "all the bituminous and fossil coal within and underlying" the tract in question; " containing an area of coal of 40 acres and 145 perches, with the privilege of entering on and occupying so much of the overlying land as might be necessary for opening mines, adits, drains, &c., and for constructing ways, roads, &c., and all the privileges necessary for the convenient working, transportation, &c., of the coal, &c., and "all rights and privileges incident or usually appertenant to the working and using of coal mines." The rights of the grantees under the foregoing conveyance were afterwards vested in the defendants. After the death of Thomas Chadwick, by proceedings in partition of his estate, the plaintiff, as one of his sons and devisees, became the owner of the part of the tract, the injury to which part is complained of in this suit.

The cause was tried February 4th 1874, before Kirkpatrick, J.

The plaintiff proved the mining of coal by defendants under his property; that by reason of their mining the surface had sunk in a great many places; that about three acres of his land had been damaged; he testified particularly as to the injury done to his land and the extent of it. He testified also that there were three springs of water on his property, which were then dried up; there had been plenty of water until the ground began to fall in; the water went over the surface; he supposed it went into the pit.

On cross-examination, he testified that the. coal was very near the surface.

From the plaintiff's evidence in chief and on cross-examination of his witnesses, it appeared that the "ribs" of the mine were drawn, that the coal in some places approached within ten or twelve feet of the surface, that it would be a difficult matter to put proper supports in the mine to hold the roof up; if they had driven narrow entries and left pillars standing it would not have caved in; but to take out coal it would be almost impossible to put up pillars to sustain that light covering, unless they had "logged it" over on the top, the expense of which would be more than the coal was worth; if very narrow rooms had been taken, and the ribs not drawn, it would have sustained itself.

There was much evidence as to the fact and cause of the injury; to its extent and the amount of damage sustained by the plaintiff.

The evidence was that when coal is taken out it destroys springs; that no way was known by which coal could be taken out without interfering with springs; whenever the rock breaks it will cause the springs to disappear before the breaks appear on the surface; if the vein of the spring is broken 200 yards from its mouth it will dry the spring up; sometimes cutting a clay vein will spoil a spring; if the spring comes out above the coal, coal

[Coleman v. Chadwick.]

cannot be mined and the spring preserved ; the best springs come from clay veins; leaving pillars in the mine would not preserve the spring; entries in mines cannot be driven without cutting clay veins.

In the course of the trial the defendants made the following offers of evidence, which were rejected by the court, and several bills of exception sealed :—

1. That at the date of the conveyance from Thomas Chadwick to William Coleman *et al.*, it was, and for many years previously had been, the universally approved, established and customary course and practice of mining coal in the vicinity of the plaintiff's land, and in this bituminous coal region—as well when the coal and surface were owned separately, as when owned together—to mine and remove all the coal without leaving ribs or pillars of coal or other supports for the surface, to be followed by evidence that the defendants mined their coal from under the plaintiff's surface according to the said course and practice of mining, and with care and skill, and without any negligence in the operation of mining.

2. That from the character of the coal vein in plaintiff's land and the vicinity, and generally throughout the bituminous coal region of Western Pennsylvania, and from the sitiuation of said coal vein in respect to the surface and the nature of the overlying soil, it is impossible to work the coal or carry on mining operations therein without disturbing the surface and causing a subsidence thereof, and that it is impracticable ·to support the surface and prevent its subsidence by means of coal pillars or ribs or artificial props; that at the date of the conveyance from Thomas Chadwick to Coleman *et al.*, it was and for many years previously, to wit: from the time when bituminous coal was first extensively mined in this region, it has been and still is the universally approved, established and customary course and practice of mining coal in the vicinity of the plaintiff's land and throughout this bituminous coal region—as well when the coal and surface were owned separately as when owned together—to mine and remove all the coal without leaving ribs or pillars or other supports for the surface; that said course and practice of mining is better for the surface owner than to attempt to keep up the surface by means of coal pillars, or ribs or props, because the surface where all the coal is removed settles evenly, whereas if coal ribs or pillars or props are left, it will eventually break and settle unevenly; and that the defendants mined their coal from under the plaintiff's surface according to said course and practice of mining, and with care and skill, and without any negligence in the operation of mining.

3. That from the nature of the coal vein under the plaintiff's surface, and its nearness to the surface, and the character of the overlying soil, it was not possible to carry on mining operations in the coal in the plaintiff's land, without disturbing the surface and

[Coleman *v.* Chadwick.]

causing the subsidence complained of in this case, and that it was not practicable to support the surface and prevent said subsidence and alleged injuries by means of coal pillars or ribs, or by artificial props; and that the defendants mined their coal from under the plaintiff's surface with the utmost care and skill, and without any negligence in the operation of mining.

The following are points of the plaintiff, which were affirmed:—

1. If the jury believe, from the evidence in this case, that the defendant or their employees mined, dug and carried away the coal and slack underlying plaintiff's property, without leaving or putting up proper and sufficient pillars, posts or supports for said surface property, by reason whereof plaintiff's property caved, sunk and fell in, and was thereby damaged, the verdict should be for the plaintiff, in such an amount as is warranted by the evidence.

2. If the jury believe, from the evidence in this case, that the defendants or their employees dug, mined and carried away the coal underlying the plaintiff's property; and took, dug and removed the coal pillars, stumps and ribs under said property, without putting up sufficient pillars and supports to keep said surface in its natural state, level and position, thereby causing the surface of said property to crack, sink, cave and fall in, causing damage to the same, the verdict should be for the plaintiff, in such an amount as is warranted by the evidence.

4. If by the deed from Thomas Chadwick to Coleman, Hailman & Co., from which company and their vendees, the defendants, by divers mesne conveyances, obtained said coal; and if, after the death of Thomas Chadwick, his heirs made an amicable partition of the surface estate to and among themselves, said James M. Chadwick taking, and now owning and possessing, a distinct part or portion thereof, said coal estate and the superincumbent land owned and in possession of said James M. Chadwick, the plaintiff, became thereby two separate and distinct estates; and if the defendants or their employees mined, dug, and carried away the said coal underlying the surface property of said James M. Chadwick, without leaving ribs, stumps or supports, or putting up proper and sufficient pillars or supports to keep said surface intact, by means whereof said surface of James M. Chadwick cracked, sunk, caved and fell in, causing damage to the same, then the verdict should be for the plaintiff.

The following are defendants' points, which were refused:—

1. Upon all the evidence in the case the verdict should be for the defendants.

2. Under the conveyance in evidence from Thomas Chadwick and wife to William Coleman and others, the grantees in said deed and those acting under them had the right to mine and take out the coal thereby conveyed, according to the established, approved

[Coleman *v.* Chadwick.]

and customary course and practice of mining bituminous coal at the time of the said conveyance, without liability to the owner of the surface for consequential damages, provided said coal was mined and taken out with proper care and skill, and without any negligence in the operation of mining and taking out the coal.

The court charged :—

" We have no extended general charge to deliver. The points presented by the counsel cover all the questions in this case, and we will not comment on the facts. Our opinion is that the plaintiff has a right to recover. We regard this as settled by the decision of the Supreme Court in Jones *v.* Wagner, 16 P. F. Smith 429.

" We have prepared a form of special verdict, which you will adopt, filling up the amounts which we have left blank. *   *   * We take this course in order that we may consider the question of the right of the plaintiff to recover for loss of springs before the court in banc, and mould the judgment as we may decide that question."

The jury returned the following verdict :—

" We find for the plaintiff in the sum of $1700, this amount including all damages of every kind, as claimed by him, and in assessing this amount we incorporate an amount of $1000, which we find and award for his losses of springs, and if the court in banc should be of opinion that he is not entitled to recover this item, then this amount to be deducted from the above verdict of $1700, and judgment to be entered for the plaintiff in the sum of $700, *non obstante veredicto ;* otherwise the verdict to be for the plaintiff in amount as above rendered."

July 11th 1874, it was " ordered that judgment be entered upon the verdict for the plaintiff upon the questions of law reserved *non obstante veredicto*, in an amount and to the extent of $700, being the amount found by the jury for loss and prejudice to the plaintiff's land, exclusive of loss of springs, with interest," &c.

Each party took a writ of error.

The plaintiff assigned for error the entering of judgment for $700, and not for $1700, the amount found by the jury.

The defendants assigned for error:—

1, 2, 3. The rejection of their offers of evidence.

5. Affirming the plaintiff's first point.

6. Affirming the plaintiff's second point.

7. Affirming the plaintiff's fourth point.

8. Refusing defendants' first point.

9. Refusing defendants' second point.

10. Charging that plaintiff had a right to recover.

*J. Fitzsimmons*, for plaintiff below.—If an owner of the whole estate have alienated the minerals, reserving the surface, he is not

[Coleman *v.* Chadwick.]

presumed to have parted with the right to support of the surface:
Bainbridge on Mines 380 ; Jones *v.* Wagner, 16 P. F. Smith 429 ;
Dugdale *v.* Robertson, 8 Kay & J. 695 ; Humphries *v.* Brogden,
1 Eng. Law & Eq. 241 ; Wakefield *v.* Buccleugh, Law Rep. 4 Eq.
613 ; Glasgow *v.* Hurlet and Campsie Alum Co., 8 Eng. Law & Eq.
13. Where general words in a contract follow particular recitals,
they are to be construed as applicable to subjects *ejusdem generis* :
Parsons on Contracts 501, note *u ;* 500, note *r.* The right of sup-
port to the surface cannot be taken away by words of doubtful mean-
ing : Bainbridge on Mines 433 ; Proud *v.* Bates, 5 Am. Law Reg.
(N. S.) 171 ; Shaw *v.* Stenton, 28 L. J. Exch. 253. Where a partic-
ular clause in a deed granting certain rights respecting persons or
things of an inferior class, followed by a general clause, such
clause will not grant rights to persons or things of a superior class :
Doe *v.* Meyrick, 2 Crompton & J. 223 ; Jackson *v.* Stevens, 16
Johns. 110 ; Queen *v.* Nevill, 8 Q. B. 452.

The springs of water cannot be dissevered from the soil ; all are
considered real estate: 1 Co. Lit. 3 b, 4 a, sect. 1 ; Caldwell *v.*
Fulton, 7 Casey 483. The defendants had no right to disturb
plaintiff's right to his flow of water: Acton *v.* Blundell, 12 M.
& W. 336 ; N. A. Railroad Co. *v.* Peterson, 14 Ind. 12 ; Wash-
burn on Easements 365, 378, 450, 456, 460 ; Smith *v.* Kenrick,
7 C. B. 515. Each contiguous proprietor has absolute control of
the water within his own premises : Wheatley *v.* Baugh, 1 Casey
533 ; Dexter *v.* Providence, 1 Story R. 387 ; 2 Hilliard on Real
Prop. 105 ; Hill *v.* Newman, 5 Cal. 445. A subterranean spring
cannot be diverted by the owner of the land above, to the injury
of those using the water : Smith *v.* Adams, 6 Paige 485 ; Ralston
*v.* Benstead, 1 Campbell 463 ; Whitestone *v.* Park, 2 Hurlstone &
Norman 870. A spring is a water-course which, after leaving the
opening, cannot be diverted : Gillett *v.* Johnston, 30 Conn. R. 180.

*M. W. Acheson,* for defendants below.—The deed from Chad-
wick was a sale of all the coal and the right to mine it ; by the
contract the whole coal may be devoted without leaving support :
Jones *v.* Wagner, 16 P. F. Smith 429. Proof of usage is admis-
sible to interpret a contract : 1 Greenl. on Evid., sect. 292, 294 ;
2 Parsons on Contr. 49 ; Dwight *v.* Whitney, 16 Pick. 179 ;
Stultz *v.* Dickey, 5 Binney 285 ; Aughingbaugh *v.* Coppenheffer,
5 P. F. Smith 347 ; Taylor's Land. & Ten., sect. 350, 538, 554 ;
Van Ness *v.* Pacard, 2 Peters 137 ; McCullough *v.* Irvine, 1
Harris 438. As to the loss of springs he cited : Wheatley *v.*
Baugh, 1 Casey 528 ; Whetstone *v.* Bowser, 5 Id. 59 ; Haldeman
*v.* Bruckhart, 9 Wright 514 ; Ballacorkist Mining Co. *v.* Harrison,
29 L. T. N. S. 658.

Mr. Justice GORDON delivered the opinion of the court, January
6th 1876.

[Coleman *v.* Chadwick.]

We have held in the case of Horner *v.* Watson, 29 P. F. Smith 251, decided at the present term, approving Jones *v.* Wagner, 10 Id. 429, that of natural right the surface land is entitled to support from the strata below, and that, when one owning the whole fee, grants the minerals, reserving the surface to himself, his grantee is entitled only to so much of the minerals as he can get without injury to the superincumbent soil, and that the plea of a custom to the contrary could not be entertained, because such a custom would be unreasonable, and hence wanting in an element essential to its validity.   To the opinion in that case we refer for the reasoning intended to sustain that conclusion.   It is admitted, however, that, as a man may do what he pleases with his own, he may, by grant, part with the right of surface support, and, it is contended, that such is the purport of the deed of Thomas Chadwick and wife to Coleman, Hailman & Co.   That part of the aforesaid deed, which is supposed to release such right, reads thus: "And all the privileges necessary for the convenient working, running and transportation of said coal, and deposition of excavated matter, and also all rights and privileges incident or usually appertenant to the working and using of coal mines."   But we cannot perceive that this grant in any way compromises the grantor's right of surface support.   If, indeed, the destruction of the superincumbent estate be one of the privileges necessarily incident and appertenant to coal mining, then the said indenture does convey the right contended for.   As, however, we have just determined that such destruction of the surface is in no way incidental to such mining, we must necessarily refuse our assent to the construction contended for.   It is in effect but another form of a plea of a general custom or usage permissive of the removal of all subjacent support.   For it is argued, that when the vendor used the words " all rights and privileges incident or usually appertenant to the working and using of coal mines," he did so in view of such custom, as above referred to, and that his covenant must be interpreted accordingly.   The answer to all this is, that as no such custom could have existed, because of its unreasonableness, it could not have entered into the contract of the parties.   Support is part and parcel of the reserved estate; it is of common right, and hence must pass, if at all, by express grant, and is not to be defeated by mere implication arising from language that does not import such an effect.

We think the whole question is determined in the negativing of the custom contended for, and hence the judgment of the District Court must be sustained.

We also affirm the same judgment in the writ of error brought by James M. Chadwick.

So far as we can judge from the record presented to us, the loss of the plaintiff's springs was occasioned by the ordinary operation

[Coleman *v.* Chadwick.]

of mining, and would have occurred though no part of the surface had been broken.   Mining must interfere more or less with those subterranean streams and percolations of water which appear upon the surface as springs; to say that the owner of the substrata shall be accountable in damage for their disturbance, is to say that he shall have no use whatever of his minerals, for, without interfering to some extent with such waters, mining is impossible.

Judgment affirmed.

WILLIAMS and MERCUR, JJ., dissented.