Weaver v. Berwind-White Coal Company, Appellant.

*Mines and mining—Coal mining—Surface support—Lease of coal.*

A grant of "all the merchantable coal in and underlying" a specified tract of land, excepting and reserving five acres of coal "underlying the buildings and spring," with the necessary mining rights to mine and remove the coal does not by necessary implication waive the right of support under all that part of the tract except such as was expressly reserved.

*Mines and mining—Surface support—Damages—Measure of damages.*

The measure of damages for permanent and irremedial injuries to land caused by failure to give surface support is the actual loss in the depreciation of the value thereof. The permanance of the injury is the test for the application of the rule.

If the injury is reparable the cost of repairing may be recovered, and if the cost of repairing is greater than the diminution in the market value, the latter is the true measure of damages. In all such cases just compensation for the loss sustained by the trespass is what the injured party is entitled to recover. When the injury is permanent, the measure of damages is the difference in market value before and after the injury.

In a proceeding to assess damages for injuries to land caused by failure to supply proper surface support, it is error to admit testimony showing the value of the springs in themselves, as a separate, independent item not connected with the general value of the land; but the value of the springs as an element in estimating the value of the land, or the destruction of them, in determining the depreciation in the value of the land after the injury, is a proper matter for the consideration of the jury.

In an action to recover damages for failure to provide surface support, witnesses in their preliminary examination to establish their competency,

may be asked as to their familiarity with the fertility of the soil, and the uses for which it was adapted, and if in this manner it is developed that the farm had been well watered with good springs, and that it was especially adapted and used for a dairy and grazing purposes, the defendant has no ground to complain.

Where the destruction of springs has been occasioned by mining and removing coal which the lessee had a right to remove in the usual course of his mining operation, the owner of the surface has no right to complain; but it is otherwise where the destruction of the springs results from the removal of the pillars which provided surface support, thus causing a subsidence thereof, and breaks in the strata which destroyed the springs. If the evidence is conflicting as to which of the two was the cause of the destruction of the springs, the case is for the jury.

Argued Oct. 9, 1906. Appeal, No. 56, Oct. T., 1906, by defendant, from judgment of C. P. Cambria Co., Dec. T., 1904, No. 47, on verdict for plaintiff in case of Abram C. Weaver v. Berwind-White Coal Mining Co.. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for injuries to land alleged to have been caused by failure to provide proper surface support. Before O'CONNOR, P. J.

At the trial when plaintiff was on the stand, the following question was asked him:

" Q. From your knowledge of the plaintiff's premises and the depressions of the soil and the effects of such disturbances, what, in your judgment, is the amount of damages he has actually sustained? "

Counsel objects to the testimony sought to be introduced by the question for the reasons:

First. That it is speculative ; second, that it is incompetent; third, that the measure of damages is the actual and real injury to the property; fourth, that the witness admits that he has no sufficient knowledge of this property from which he would be warranted in testifying or making a comparison.

. The Court: The objection is overruled, exception noted, and bill sealed for the defendant company. [6]

The court refused to strike out similar testimony offered by Silas Fry, Andrew Bourgardner, Levi Weaver and Stephen Hostetler. [7–11]

Abram Hostetler testified as follows:

" Q. You have testified to the condition you found on the premises of the plaintiff before and after the removal of the coal from under the same. I wish you would state what actual damages the plaintiff's property has sustained by reason thereof, excluding everything in the way of speculative damages for future use of the property and giving merely actual present damages to the property? A. I would say from $15,000 to $20,000."

The court refused motion to strike out exception. [4]

R. L. Watt testified as follows:

" Q. From your knowledge of the plaintiff's premises and the depressions of the soil and the effects of such disturbances, what, in your judgment, is the amount of damages he has actually sustained? "

Counsel objected to the testimony sought to be introduced by the question for the reasons:

First, that it is speculative; second, that it is incompetent; third, that the measure of damages is the actual and real injury done to the property; fourth, that the witness admits that he has no sufficient knowledge of this property from which he would be warranted in testifying or making a comparison.

The Court: Objection overruled, exception noted, and bill sealed for the defendant company. [5]

Plaintiff was further questioned as follows:

" Q. State in detail the actual losses you have sustained to your land through the mining operations of the defendant company as carried on under the surface? A. Well, by breaking the surface and having all these dips and kettles, $20,000 would be the damage what was done to the surface and to the water. Just of late we had lots of those depressions. I can't keep no cows; after the loss of the water I lost every week three pounds of butter each week."

On motion the court refused to strike out the answer. Exception. [3]

" Q. To what extent had you followed the business of raising cattle and grazing? "

Objected to for the reason that it is incompetent and speculative in its character, the measure of damages in this case being the injury sustained and the cost of replacing or repairing that injury.

The Court: The objection is overruled, an exception noted, and bill sealed for the defendant company. [2]

" A. Oh, we raised quite a lot of young cattle and cows, and we had water enough there to water twenty head of horses. I used to have twenty head of horses every winter on that farm and twenty-five head of horned cattle, and now I have five head of horses and haven't water to water five head of horses without hauling it, and have seven head of cows. I had to put away all that stock and can't raise any young cattle on account of that. We had some young cattle last summer and could not sell them to the butcher. I fed them the milk off the other cows just to keep them three head in the stable. I fed them the milk off the cows just on account of hauling water until I got them ready to sell to the butcher and got them away."

" Q. How has your land been affected, if any at all, in respect to its ability to raise and sustain cattle by reason of the injuries occasioned by the mining and removal of the coal ? "

Objected to as being incompetent, as being speculative in its character, and in addition thereto the prospective profits of which he might be deprived would not be a matter competent to be proven.

The Court: The objection is overruled, an exception noted, and bill sealed for the defendant company. [1]

" A. By the mining of the coal and the breaking of the surface, they took that water that supplied my stock and my cellar was like an icehouse. I never needed ice and I had the water; we had water there as good as ice-cool, and we could make butter; and we had to put away with the stock; we pretty nearly sold all the stock on account of that."

Plaintiff presented the following points :

2. That under the deed of conveyance as made and executed by Abram C. Weaver and wife to Robert H. Sayre, which deed severed the coal strata from the surface land and under which defendant claims the right to mine and remove the coal, it was, and is, the absolute duty of the defendant, in mining and removing said coal, to do so in such manner as not to interfere with or injure the surface land and the estate of the plaintiff. *Answer :* We have so instructed you and we affirm the point. [12]

Defendant presented these points:

4. It appearing from the deed of conveyance from Abram C. Weaver, the plaintiff, and Mary Ann, his wife, dated March 29, 1893, and recorded in Cambria County in Deed Book, vol. 89, page 109, etc., he sold and conveyed all the merchantable coal underlying the premises described in the plaintiff's statement of claim, inter alia, to Robert H. Sayre, his heirs and assigns, " excepting and reserving five acres of the ' D ' bed of coal under-. lying the buildings and springs," and it further appearing in said deed of conveyance that the grantors conferred upon the grantee therein named, his heirs and assigns, " the right to mine and carry away all of said coal," the defendant company, which is now and has been operating or mining and removing said coal have the right to mine and carry away all of said coal without being required to leave in the mine any coal or other artificial pillars to support the superincumbent estate, and that under the clause mentioned granting the right to mine and carry away all of said coal, the defendant company would not be liable in damages by reason of the subsidence of said premises or any part thereof, loss of water in springs, opening of crevices and depressions on the surface, and such being the case, the verdict should be for the defendant company. *Answer:* Refused. [13]

9. Even if under the instructions of the court the jury believe that the plaintiff would be entitled to recover damages for injuries sustained, yet as the plaintiff has failed to produce evidence which would enable the jury to properly assess such damages, therefore the plaintiff has failed to make out his case and the verdict must be for the defendant. *Answer:* Refused. [14]

8. That under all the evidence in this case there can be no recovery for loss of water. *Answer:* The eighth point is denied; it is practically the same as the fourth. [15]

3. That under all the evidence in this case the verdict should be for the defendant. *Answer:* Refused. [16]

Verdict and judgment for plaintiff for $6,000. Defendant appealed.

*Errors assigned* were (1–11) rulings on evidence; (12–16) above instructions, quoting them.

*David L. Krebs* and *John E. Evans*, of *Evans & Evans*, for appellant.—The questions to which the defendant's counsel objected on the trial of this case, not only of the plaintiff himself, but of various witnesses called by him and covered by the eleven assignments of error, together with the motions to strike out their answers, were based upon the objection that the answers were simply a lumping estimate ; the expression of opinion without any fact upon which to base them and which opened the way for witnesses to take into consideration matters which have no place in the adjustment of the damages : Robb v. Carnegie, 145 Pa. 324; Lentz v. Carnegie, 145 Pa. 612.

The plaintiff had the right to mine and remove all of the coal except that which was distinctly reserved : Jones v. Wagner, 66 Pa. 429 ; Horner v. Watson, 79 Pa. 242; Coleman v. Chadwick, 80 Pa. 81; Coal Co. v. Hopkins, 198 Pa. 343; Scranton v. Phillips, 94 Pa. 15 ; Carlin v. Chappel, 101 Pa. 348; Williams v. Hay, 120 Pa. 485.

It is a well-settled principle of law in Pennsylvania that the injury to or destruction of surface springs by reason of the mining of minerals, either from adjoining lands or from underneath the surface of the particular lands, is an injury for which the law makes no provision unless it is clearly shown on the part of him who seeks to recover that the mining operations were conducted in a manner that clearly indicates malice or negligence on the part of the defendant: Wheatley v. Baugh, 25 Pa. 528; Haldeman v. Bruckhart, 45 Pa. 514.

*H. S. Endsley*, with him *Chas. C. Greer*, for appellee.—There was no error in the rulings on evidence : Noonan v. Pardee, 200 Pa. 474 ; O'Donnell v. Lynch, 1 Watts & Sergeant, 283 ; Sergeant v. Ford, 2 Watts & Sergeant, 122 ; Patterson v. Natural Gas Co., 172 Pa. 554.

If the owner of the whole fee in land conveys the coal in the land in general terms, retaining the residue of the tract, the purchaser acquires the coal with the right to mine and remove it, provided he does so without injury to the superincumbent estate : Youghiogheny River Coal Co. v. Allegheny Nat. Bank, 211 Pa. 319 ; Noonan v. Pardee, 200 Pa. 474 ; Kistler v. Thompson, 158 Pa. 139.

The owner of the coal is liable to the owner of the surface if

a spring is ruined through failure of the former to properly support the surface, but not when the injury to the spring is caused by mining operations where the surface is supported in its natural condition: Gumbert v. Kilgore, 6 Cent. Rep. 406; Barnes v. Berwind, 3 Pennypacker, 140.

OPINION BY MR. JUSTICE ELKIN, January 7, 1907 :

This is an action in trespass for failure to provide surface support in the mining of coal. It was conceded at the trial that the appellee had been the owner in fee of the premises on which the damages claimed are alleged to have been done. He sold and conveyed the coal, together with mining rights and privileges to the appellant company. The grant is for " All the merchantable coal in and underlying all that tract of land," for which the right of surface support is claimed in this action ; " excepting and reserving however, from and out of this conveyance five (5) acres of the ' D ' bed of coal underlying the buildings and spring." ˙ The usual mining rights are granted in the deed, among which are the following: " With the right to mine and carry away all the said coal and with all the mining rights and privileges necessary or convenient to such mining and removal of the same." The foregoing are the only covenants of the deed with which we have to do in defining the rights of the parties to this controversy. It is important to note that the right of surface support was not expressly waived, and the only question on this branch of the case is whether there was anything peculiar in the grant, either of the coal, or of the mineral rights, and the reservations therein contained, to take this case out of the general rule uniformly recognized and followed by our courts, which provides that the underlying or mineral estate owes a servitude of sufficient support to the upper or superincumbent strata. This rule is settled law in this state and has never been departed from : Jones v. Wagner, 66 Pa. 429; Horner v. Watson, 79 Pa. 242 ;. Coleman v. Chadwick, 80 Pa. 81 ; Carlin v. Chappel, 101 Pa. 348; Williams v. Hay, 120 Pa. 485; Youghiogheny River Coal Co. v. Hopkins, 198 Pa. 343; Noonan v. Pardee, 200 Pa. 474; Youghiogheny River Coal Co. v. Allegheny National Bank, 211 Pa. 319. The contention of the learned counsel for appellant that the grant of " All the merchantable coal " under-

lying the premises, together with the necessary mining rights to mine and remove the same by necessary implication waives the right of surface support under all that part of the tract except such as was expressly reserved, cannot prevail in the light of the above authorities. It is now too late to discuss the policy of the law or the wisdom of the rule. The argument is not strengthened by the suggestion that inasmuch as the grantor had conveyed all the merchantable coal, reserving only five acres of the "D" seam underlying the buildings and spring, he thereby intended to waive surface support to all that part of the tract not included in the five-acre reservation. If the grantor had conveyed all the coal underlying the entire tract without any reservation, it must be conceded that the owner of the superincumbent strata would be entitled to surface support. The fact that he cut down the grant, reserving five acres for which no compensation was paid and no title conveyed, cannot be construed to mean that appellee is in worse position in so far as his right to surface support is involved, than if the five acres had been included in the grant and compensation received therefor. It is clear that appellee did not by express grant, nor by necessary implication, nor by any covenant contained in the deed of conveyance, waive the right to surface support.

The only question remaining to be considered is whether there was any reversible error in the rulings of the court below as to the proper measure of damages, or in the admission of testimony relating thereto. The rule is settled that the measure of damages for permanent and irremedial injuries to land caused by failure to give surface support is the actual loss in the depreciation of the value thereof. The permanence of the injury is the test for the application of the rule: Noonan v. Pardee, 200 Pa. 474. If the injury is reparable the cost of repairing may be recovered, and if the cost of repairing is greater than the diminution in the market value, the latter is the true measure of damages. In all such cases just compensation for the loss sustained by the trespass is what the injured party is entitled to recover. When the injury is permanent, the measure of damages is the difference in market value before and after the injury: Vanderslice v. Philadelphia, 103 Pa. 102; Fulmer v. Williams, 122 Pa. 191; Williams v. Fulmer, 151 Pa. 405; Thompson v. Traction Co., 181 Pa. 131. In the

case at bar the principal injury complained of, was the destruc-
tion of the springs of water, although subsidence in the sur-
face and disturbance of the buildings entered into the elements
of damage claimed.   The case was tried before the opinion in
Rabe v. Shoenberger Coal Co., 213 Pa. 252, was handed down,
so that neither the court nor the counsel had the guidance of
that decision in the trial of the cause.   We held in that case
that it was error to admit testimony showing the value of the
springs in themselves, as a separate, independent item, not
connected with the general value of the land.   It was said,
however, and it is the rule in such cases, that the value of the
springs as an element in estimating the value of the land, or
the destruction of them, in determining the depreciation in the
value of the land after the injury is a proper matter for the
consideration of the jury.   The value of the springs can only
be considered as incidental to and affecting the value of the
land.   On the whole we think the testimony produced on the
part of the plaintiff came fairly within this rule.   It was di-
rected to the point of showing the actual loss to the owners by
reason of injury to the surface, loss of the springs, and damage
to the buildings.   In this respect the rule in Noonan v. Pardee,
200 Pa. 474, was followed.   It may be conceded that some of
the testimony relating to the springs is open to the objection
that the value was fixed as a separate item, but this was brought
out on cross-examination and was insisted upon throughout
the trial by the learned counsel for appellant, as the proper
measure of damages, and since it has not been assigned for
error it is too late to raise the question here.

The first eleven assignments of error relate to the compe-
tency of the testimony of certain witnesses in fixing the deprecia-
tion in the value of the land in what is termed a lump sum.   In
order to establish the competency of the witnesses to express
an opinion as to the depreciation in the value of the land on
account of the injuries complained of, they were asked as to
their familiarity with the fertility of the soil, the uses for
which it was adapted and other preliminary questions of a like
character.   In this manner it was developed that the farm had
been well watered with good springs and that it was especially
adapted and used for dairy and grazing purposes.   It is objected
that testimony of this kind is speculative in character and

should not have been admitted in ascertaining the value of their property. It must not be overlooked, however, that the witnesses did not undertake to speculate on the loss to the owner of the property by reason of the inability to continue the uses to which the property had been put prior to the injury. All of these questions were asked as preliminary in order to show the competency of the witnesses to testify as to the amount of damage sustained. In this we see no reversible error.

The fifteenth assignment of error broadly raises the question of the right of the appellee to recover any damages for the loss of the springs of water under the facts of this case. In support of this contention the rule of law is invoked, that injury to or destruction of surface water, or springs, by reason of the mining of coal, or other minerals, either from adjoining lands or from underneath the surface of the particular land, when the mining is done in a competent and workmanlike manner, is damnum absque injuria. It is true the law makes no provision for compensation to the owner of the surface for damages in such cases, unless it is clearly shown on the part of him who seeks to recover that the injury was done in a manner indicating malice or negligence on the part of the operator. This rule cannot be questioned in the ordinary grant of coal, where surface support is waived nor as we understand it is it denied in this case. It means that the operator has a right to mine and remove the coal in a proper manner according to the approved methods of mining without liability for such injuries as may incidentally result to the superincumbent strata. This rule, however, must be read and understood in the light of the facts in any particular case. In the case at bar if there had been no subsidence of the surface, no disturbance of the superincumbent strata by reason of the mining and removal of all the coal underlying the same; or if it appeared as a fact that the springs were not destroyed by reason of the failure to provide surface support, there could be no recovery. This is the pinch of the case. The learned counsel for appellant contends that the uncontradicted testimony of the expert witnesses showed that the mining of the coal when sufficient surface support is provided, would cause the springs to disappear, and argues that the springs were not destroyed by reason of the

subsidence of the surface, or breaks in the intervening strata, but was the natural result of the mining operation. If this were true in fact, or if these facts were not controverted, it would be an end of the case. It would then be clear that the failure to provide surface support did not cause the injury to the springs, but this was a controverted question of fact at the trial and many witnesses were examined in reference to it, there being a diversity of opinion among them on the question. It was submitted to the jury in a well-considered and careful charge by the learned trial judge, in which the law as applied to the facts of the case was correctly stated. Under the testimony it was a question for the jury to determine whether the destruction of the springs had been occasioned by mining and removing the coal which the appellant had the right to remove in the usual course of its mining operations, or whether it resulted from the removal of the pillars which provided surface support, thus causing a subsidence thereof and breaks in the strata which destroyed the springs. The learned court carefully explained the law to the jury on this question and we fail to discover any error in the instructions. What we have already said is a sufficient answer to the last assignment of error which raises the question as to the inadequacy of the charge. This assignment is not sustained.

Assignments of error overruled and judgment affirmed.