# Miles, Appellant, *v.* Pennsylvania Coal Company.

*Mines and mining—Surface support—Contract.*

While the owner of the surface is entitled as of natural right to its support by the owner of the subjacent mineral estate, the common owner of both estates, or the owner of the fee simple title to the tract of land, may by contract, relieve the owner of the mineral estates from any duty to support the surface, and from liability for any injury or damage done to it by mining and removing all of the mineral.

Where a coal lease grants the right to remove all the coal, gives unlimited surface rights and stipulates that the lessee shall not be liable for any falling in of the surface in consequence of the mining and removing of the coal, the lessee may remove all the coal without any liability for injuries to the surface. A provision in the lease giving the lessors the right to enter upon the workings so as to satisfy themselves as to the correctness of the lessee's return, and also giving the right to the lessors to designate where and in what manner more pillars are to be left, than it appears is the intention of the lessees to leave, does not change the construction of the instrument.

Argued Feb. 27, 1907. Appeal, No. 77, Jan. T., 1907, by plaintiffs, from decree of C. P. Lackawanna Co., Jan. T., 1906, No. 2, dismissing bill in equity in case of William Miles et. al., v. The Pennsylvania Coal Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*H. M. Hannah* and *S. B. Price*, for appellants.—The owner of the surface is entitled to absolute support, and, as in cases of rights to water, not as an easement or right depending on a supposed grant, but as a proprietary right at common law: Carlin v. Chappel, 101 Pa. 348; Youghiogheny River Coal Co. v. Bank, 211 Pa. 319; Horner v. Watson, 79 Pa. 242; Barnes v. Berwind, 3 Pennypacker, 140; Lehigh Coal & Nav. Co. v. Harlan, 27 Pa. 429.

*Everett Warren,* with him *E. N. Willard, Henry A. Knapp* and *Charles P. O'Malley,* for appellee.—It is well established that the surface owner's right of surface support is a right which he may give up, or waive, or barter away, or dispose of as fully and freely as he may dispose of any other right: Scranton v. Phillips, 94 Pa. 15 ; Williams v. Hay, 120 Pa. 485.

OPINION BY MR. JUSTICE MESTREZAT, April 1, 1907 :

By an agreement in writing dated November 23, 1880, the plaintiffs, or those under whom they claim, demised, leased and to mine let to the defendant company " all the merchantable coal lying and being in the veins in, under and upon " a certain described tract of land in what was then Lackawanna township, Luzerne county, this state.    The defendant company, by virtue of this authority, mined and removed two-thirds of the coal, leaving the one-third thereof in the shape of pillars which support the surface.    The company was proceeding to mine and remove the pillars when the plaintiffs filed this bill in the court below averring that the removal of the pillars would cause irreparable damage to the surface, and praying an injunction to restrain such action by the defendant company.    The defendant filed an answer averring that it had the right to mine and remove all the coal under the premises, including the pillars, and that any damage which might be caused to the surface of the land is released by the contract between the parties.

A motion was made for a preliminary injunction, which was refused.    An appeal was taken by the plaintiffs to this court, which was heard last year, and the decree of the court refusing the preliminary injunction was sustained : Miles v. Pennsylvania Coal Company, 214 Pa. 544.    On the return of the record to the court below, the case was proceeded in until a final decree, refusing an injunction, was entered from which we have this appeal.

The single question raised by the appeal is whether the defendant company has the right to mine and remove all the coal under the plaintiffs' premises without leaving sufficient pillars to support the surface.    The answer to the question requires the interpretation of the lease and depends entirely upon the proper construction of that instrument.

An able and elaborate opinion was filed by the trial judge in the court below on refusing the motion for a preliminary injunction and will be found in the report of the case when it was here on the previous occasion. The law applicable to the interpretation of such contracts is there correctly stated, as appears by the citation of our own cases and of other recognized authorities, and it is clearly pointed out that, applying the well-settled principles announced in those cases, the lease conferred upon the defendant company the right to mine and remove all the coal without leaving any pillars to support the surface, and without liability for any damage done to the surface.

It is settled law in this state that, in the absence of a contract providing the contrary, the owner of the mineral estate in a tract of land owes a duty, ex jure naturæ, to the owner of the superincumbent estate of absolute support to the surface. The owner of the coal, like the owner of the surface, has an estate in land, but the former holds his subject to the right of the latter to demand that he do no injury to the surface by removing the coal. As we have said in a former case, the owner of the mineral must support the surface if it requires every pound of coal to be left in place for that purpose. There can be no doubt that such are the reciprocal rights of the owners of the surface and of the mineral estate in this commonwealth. The several cases of this court on the subject conclusively determine the question.

While, however, the owner of the surface is entitled as of natural right to its support by the owner of the subjacent mineral estate, it is equally well settled that the common owner of both estates, or the owner of the fee simple title to the tract of land, may by contract relieve the owner of the mineral estate from any duty to support the surface and from liability for any injury or damage done to it by mining and removing all the mineral. Being the common owner of the whole title and, therefore, having the jus disponendi, he may make any legal disposition of the property he may desire. He may sell the coal and retain the surface, or he may sell the surface and retain the coal. In selling or leasing the coal, he may grant such rights to the vendee or lessee as either may desire or deem proper or necessary to remove the entire body

of coal, as well as such rights in, through or over the surface as may be necessary for the same purpose. In other words, having the absolute dominion over the property he may grant such rights therein and thereto as may be agreed upon and are stipulated for in the contract. This naturally and logically follows from his ownership of the fee simple title to the property.

In Barringer and Adams on Mines and Mining, 676, it is said: "Though the right of surface support is absolute, yet the subjacent owner may be relieved of the corresponding obligation by a release from the surface owner or by the terms of the instrument creating his estate." In Williams v. Hay, 120 Pa. 485, Mr. Justice Paxson, speaking for the court, says (p. 495): "It is settled law in this state that where one person owns the surface and another person owns the coal or other minerals lying underneath, the under or mineral estate owes a servitude of sufficient support to the upper or superincumbent estate. This principle has no application where the same person is the owner of both estates, nor does it apply where by the contract between the parties they have covenanted for a different rule. Like any other right, the owner of the surface may part with the right to support, by his deed or covenant." Scranton v. Phillips, 94 Pa. 15, was an action to recover damages for injuries done to a lot and the building thereon by reason of the settling of the surface, caused by mining and removing the coal. It was held that the implied right of surface support might be excepted from the grant by apt words in the contract; and in delivering the opinion Mr. Justice Mercur, in construing the contract between the parties, said (p. 22): "Thus, in clear, express and distinct language, it was agreed, the owner of the mine, his heirs and assigns, should be exempt from the very liability now attempted to be fastened on him and his assigns. We see no reason why a person shall not be bound by his agreement to exempt another from liability for damages in working a coal mine, as well as from liability for damages resulting in the performance of any other kind of labor. No rule or policy of law forbids it." In Smith v. Darby et al. L. R., 7 Q. B. 716, Mr. Justice Mellor says (p. 726): "The man who grants the minerals and reserves the surface is entitled to make any bargain that he likes; both parties are

just as much at liberty to make a bargain with reference to coals and minerals, as to make a bargain with reference to anything else."

The question, therefore, in this case is whether the contract of the parties permits the removal of all the coal, including the pillars, by the defendant company without liability for injury done thereby to the surface. If the plaintiffs by their contract have granted such right to the defendant company they are not now in a position, against the wishes of the defendant, to recall it, notwithstanding it may be, as their counsel urgently insists, injurious to their interests. Both parties must stand by the contract, which, on proper application, the court is required to enforce. A careful examination of the contract convinces us that the only purpose which both parties had in view when it was executed was the mining and removal of all the coal, and that such mining operations by the lessee should be without regard to the effect they might have upon the surface. The different provisions of the contract all point to this as the main and important purpose of the parties in entering into the lease. The demise is of "all the merchantable coal . . . . in the veins in, under and upon" the land; "together with the right to mine and remove said coal in said veins until all the merchantable coal has been mined and removed from said veins on said hereby leased premises." Then follow unlimited surface rights. The lessee is granted the right to use the lands "for the digging and making of all air-shafts to and through the surface of said lands, with the right to dig the same as in the opinion of the said lessee may be necessary for the proper working and ventilation of the workings in the said veins of coal." It is further convenanted that the lessee company may use any shafts, slopes or other openings already opened on the demised premises; and the company is granted without any restrictions whatever "the right to deposit culm, dirt and refuse on the said lands hereby demised." The surface was further put under the servitude of the lessee for road purposes by the following covenant: "The said lessee-shall have the right of way over the surface of the said hereby demised tract of land for the construction and making of any and all railroads and the roads that may be necessary for the removal and transportation of coal during

the continuance of this lease, and after the coal on said hereby demised tract of land has been exhausted."

It is apparent, we think, from these brief excerpts from the lease, that the intention of the lessors in entering into the contract was for the purpose of having the entire body of their coal mined and removed so that they could realize upon it; and that this was to be done without regard to the effect of the mining operations upon the surface. The contract grants in terms all the coal, with the right to mine and remove it. The surface rights, it will be observed, are unlimited and substantially confer authority upon the lessee to use the surface to the exclusion of its owners. The rights of the lessee company to the surface could scarcely be greater if the lessors had granted it the fee during the continuance of the mining operations. These stipulations show the intention of the parties in entering into the contract, and that the manifest purpose on the part of the lessors was to realize upon the entire mineral estate.

In addition to the intention of the lessors, thus clearly disclosed, that the lessee should mine and remove all the coal without regard to the injury done the surface, it is specifically covenanted in the agreement as follows: "It is hereby further agreed that the said lessee shall not be liable for any falling in of any part or parts or all of the surface of the said hereby demised premises in consequence of the mining and removing of all of the said coal, and the said lessors shall indemnify the said lessee against any liability for any falling in of any surface of any lots on said demised premises the surface of which may have been sold by said lessors." Here is an express covenant by the lessors not only relieving the lessee from injury to the surface in consequence of the mining operations in removing all the coal, but also indemnifying the lessee against liability for injury that may be done to the surface of any lots which may be owned by other persons than the lessors. Read in connection with the stipulations in the lease granting the right to remove all the coal, this covenant against liability for injury to any part of the surface arising from the act of mining and removing all of the coal is conclusive against the contention of the lessors that the lessee is required under the lease to leave pillars or any part of the coal for the support of

the surface. As said by Mr. Justice Mercur in Scranton v. Phillips, 94 Pa. 15, " in each case the question is, did the parties agree there should be no obligation in regard to support?" In the case in hand, the agreement is explicit and clearly confers upon the lessee the right to remove all the coal without regard to the damage which may result to the surface. Of course in exercising the right to remove all the coal, the lessee must use proper methods in its mining operations, and must not by careless and negligent mining injure the surface: Youghiogheny River Coal Co. v. Allegheny National Bank, 211 Pa. 319. But aside from this limitation the lessee company may, under its contract, remove all the pillars which it has heretofore left to support the surface, and if it results in injury to the superincumbent estate, the owner has no redress against the company.

It is contended, however, by the plaintiffs that the following clause of the lease prevents the removal of the pillars, and shows that the parties intended they should remain in place to support the surface: " It is hereby further agreed that the said lessors shall have the privilege at any time, by their agent or engineer, to enter upon the workings of the said lessee in and upon the said hereby demised lands, and to satisfy themselves as to the correctness of the returns of the quantity of the coal mined, and if said lessors may wish at any time to have more pillars left in the mines than it appears to be the intention of the said lessee to leave or than said lessee may have left in similar workings in said hereby demised premises, the said lessors may by written notice to said lessee designate where and in what manner such pillars are to be left." Notwithstanding the very earnest argument of the plaintiffs' counsel in support of their interpretation of this clause of the contract, we are clear that it is not tenable. This clause must be construed with the other parts of the agreement with a view of giving effect to the whole instrument. It was not the intention that it should abrogate those parts of the agreement which give the lessee the right to remove all the merchantable coal with a release from liability for injury done the surface. That will not be presumed in the absence of language clearly importing such purpose. The first part of the clause gives the lessors the right to enter the mine to verify the correctness of

the quantity of coal returned as mined by the lessee; and the latter part was to enable the lessors to ascertain if the mining operations were being conducted so that " all the merchantable coal could be removed." Both clauses were inserted in the contract to enable the lessors to protect their interests, and for that purpose the latter had the stipulation inserted that they might "designate where and in what manner such pillars are to be left." The lessee company was impliedly required to conduct the mining operations skillfully and carefully, but the lessors intended by the stipulation in question to make themselves the judges of the fact, with authority to direct the place and number of the pillars necessary to accomplish the purpose. Had the pillars been removed or an insufficient number of pillars been left in the progress of the mining, it is apparent that it would have greatly diminished the quantity of coal which could have been removed from the mine, and consequently the amount of royalty which the lessors would have received. It was therefore necessary that the lessors secure their interests by a provision in the contract that they might, at any time during the progress of the mining, require the lessee to protect the mine by additional pillars of such extent and in such locality as the lessors might designate. This was the manifest purpose of the clause in question. After all the coal, except the pillars, had been mined, and the pillars were no longer needed to protect the mine and the mining operations, the lessee was authorized by the contract to remove them and account to the lessors for the royalty.

The assignments of error are overruled, and the decree is affirmed.