# Bibby, *et al. v.* Bunch.

*Bill to Enjoin Mining Operation.*

(Decided June 4, 1912. 58 South. 916.)

1. *Mines and Mineral; Conveyance; Reservation of Mineral Rights.*—A reservation in a deed of all minerals and mining right in and to the land conveyed operates as an exception of minerals and mining rights from the grant.

2. *Same; Effect.*—Where land had been conveyed to another by a deed reserving to the grantor all minerals and mining rights, a

grantee from such grantor of all minerals under the surface acquires the right to sink shafts, slopes and drifts, or make openings of a character reasonably necessary and convenient for the mining operations; but, where the stratum of mineral lies so close to the surface that to mine it throughout its extent, will necessarily destroy the surface in its natural state, the mineral so located cannot be mined, as the right to mine is servient to the right of the owner of the surface to have the surface perpetually sustained in its natural state.

3. *Same; Shale.*—Shale is a mineral.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Suit by Mrs. M. E. P. Bunch against William Bibby and another to enjoin mining operations. From a decree overruling demurrers to the bill, defendants appeal. Affirmed.

The bill alleges that the complainant is the owner of the surface of a certain 40 acres of land, which is described, having acquired it by deed from one William Tanner and wife on the 4th day of February, 1897, but which deed reserved the minerals under the surface; that, to wit, on March 14, 1905, Tanner and wife conveyed by deed to Mary Bibby all the minerals under the surface. It is then averred that within 12 months before the filing of this bill the respondents began mining operations for shale upon said land, and that they are now actively prosecuting said mining operations, and that in the prosecution of said mining operations the respondents have sunk or caused to be sunk a large number of holes, wells, or pits, to wit, 12, upon said land, which are approximately 5 feet square at the surface, and range in depth from approximately 10 feet to 30 feet, and have permitted the said holes, wells, or pits to be and remain open, and that in the prosecution by respondents of said mining operations they have removed or caused to be removed and cleared away or destroyed the surface and soil of a large area of said land, to wit,

[Bibby, et al. v. Bunch.]

one acre, and have declared their purpose to be, in carrying on said mining operations on said land, to disturb, destroy, and remove the surface and soil of all of said 40 acres of land, save and except a small portion thereof. The bill then alleges the uses for which the surface is valuable, stating them, together with the allegation that complainant has no remedy at law for the grievances complained of, that her injuries are constant, recurring, and increasing, and that she is therefore entitled to injunctive relief. The demurrers to the bill are that, for aught that appears, respondents have a right to conduct the mining operations charged in the bill; for aught that appears, it is necessary in said mining operations for the respondents to have sunk or caused to be sunk the alleged holes, wells, pits, etc., and have permitted the same to remain open, and to have removed or caused to be removed or carried away the surface and soil as alleged. The demurrers also raise the question of misjoinder.

HARSH, BEDDOW & FITTS, for appellant. Shale is a mineral.—*McCombs v. Stevenson*, 104 Ala. 159. Complainant had an adequate remedy at law.—*Williams v. Gibson*, 84 Ala. 228; 93 Mo. 107; 5 S. W. 606. Modern authorities regard very lightly the distinction between an exception or reservation and a grant.—9 Cyc. 577; 27 Id. 685; *Hooper v. Dora Coal Co.*, 95 Ala. 238; 5 S. W. 106. The authorities hold to a reasonable construction of the doctrine that superincumbent soil is entitled to support natural or artificial, and that the surface is subject to the necessary use of the mine owner in making openings, etc.—*Williams v. Gibson, supra; Hooper v. Dora C. Co., supra; L. & N. v. Massey,* 136 Ala. 160. A reservation of minerals includes an open, superficial stone quarry.—10 Kulp. 1.

JOHN T. GLOVER, for appellee.  The remedy at equity is undoubted, and there is no adequate remedy at law. —*Bolling v. Crook*, 104 Ala. 130; *Kellar v. Bullington*, 14 South. 466; *Roberts v. Vest*, 126 Ala. 259; *Driver v. New*, 57 South. 437; *Gulf Red Cedar Co. v. Crenshaw*, 35 South. 50.  It is well settled that the owner of minerals and mining rights must conduct his mining operation so as to leave a sufficient support for the surface. —101 Pa. St. 348; 5 M. & W. 69; Rogers on Mines, 455; *Williams v. Gibson, supra; Sloss-Sheffield Steel & I Co. v. Sampson*, 48 South. 493; *West Pratt C. Co. v. Dorman*, 49 South. 849; 27 Cyc. 788.

SAYRE, J.—In 1897 one Tanner, owning then the fee in a certain 40-acre tract of land, sold and conveyed the same to appellee, "all minerals and mining rights reserved."  This reservation operated as an exception of minerals and mining rights from the grant.—*Webb v. Jones*, 163 Ala. 637, 50 South. 887.  In 1905 Tanner conveyed the minerals and mining rights to Mary Bibby, one of the appellants.  In 1911 appellee filed her bill averring the facts stated above and in effect, after amendment, further charging that appellant Mary Bibby and her husband had begun and were then actively engaged in joint mining operations for shale, which underlay the land, in the prosecution of which they had removed and destroyed the surface of a large area, to wit, one acre, and had stated to complainant their intention, in the future prosecution of their mining operations, to "disturb, destroy and remove the surface and soil of all said forty acres of land save and except a very small area thereof."  It is averred that complainant's estate in the surface, which is well timbered, abundantly covered with herbs and grasses, and valuable for agricultural and residential purposes, will

be irreparably injured by the further disturbance, destruction and removal of the soil and the timber, herbs and grasses thereon. The prayer, among other things which need no mention, was that a perpetual injunction be awarded against appellants, restraining the further prosecution of their mining operations so as to disturb, destroy, remove or endanger the soil or surface thereof, or the herbs, grasses or timber thereon. The chancellor overruled a demurrer and this appeal is prosecuted to review that ruling.

Shale is a mineral.—*McCombs v. Stephenson*, 154 Ala. 109, 44 South. 867.

Appellee does not deny that appellants acquired the right by the deed to Mrs. Bibby to sink shafts, slopes, drifts, or make openings of a character reasonably necessary and convenient for their mining operations, but the contention on behalf of appellee is that appellants have no right to go further, the result of which contention, if sustained in a case where the stratum of mineral lies so close to the surface that to mine it throughout its extent would necessarily destroy the surface in its natural state, would be that mineral so located could not be mined. But that seems to be the rule laid down by the authorities and, in our judgment, it is sustained by the reason of the matter. Our own cases say that the right to mine is servient to the right of the owner of the surface to have it perpetually sustained in its natural state.—*Williams v. Gibson*, 84 Ala. 228, 4 South. 350, 5 Am. St. Rep. 368; *Sloss-Sheffield Co. v. Sampson*, 158 Ala. 590, 48 South. 493; *West Pratt Co. v. Dorman*, 161 Ala. 389, 49 South. 849, 23 L. R. A. (N. S.) 805, 135 Am. St. Rep. 127, 18 Ann. Cas. 750. The doctrine is thus stated by the Supreme Court of Pennsylvania: "Where there has been a horizontal division of the land, the owner of the subjacent estate, coal or other mineral,

owes to the superincumbent owner a right of support. This is an absolute right arising out of the ownership of the surface. Good or bad mining in no way affects the responsibility; what the surface owner has a right to demand is sufficient support, even, if to that end, it be necessary to leave every pound of coal untouched under his land.—*Berwind v. Barnes*, 13 Wwly. Notes Cas. 541; also the English case, *Harris v. Ryding*, 5 M. & W. 60, in which Baron Parke uses this language: 'I do not mean to say that all the coal does not belong to the defendants, but they cannot get it without leaving sufficient support.' We have followed rigidly this rule, as thus tersely suggested, in all our decisions on the subject, and they have been many. Of course, defendant had a right to all the coal under this lot, but, he had no right to take any of it, if thereby, necessarily, the surface caved in. The measure of his enjoyment of his right must be determined by the measure of his absolute duty to the owner of the surface."—*Noonan v. Pardee*, 200 Pa. 474, 50 Atl. 255, 55 L. R. A. 410, 86 Am. St. Rep. 722. See, also, 27 Cys. p. 788, "Subjacent Support," and notes.

By way of illustrating what they hold to be the unfairness of appellee's position appellants suppose—consistently with the averments of the bill, they think— that the surface which appellants' further operations in the manner contemplated by them will remove and destroy is composed of a soil only two or three inches thick. How unreasonable it would be, they say, that the owners of the shale in such a case should be denied the right to destroy a natural surface of such inconsiderable value when at the end of their brief operations there would be left for appellee that vast domain extending usque ad coelum et ad inferos. In that case, probably no line of division between the surface and

[Bibby, et al. v. Bunch.]

the minerals beneath would have been drawn. And that is not in accord with the necessary intendment of the case presented by the bill which avers, as has been shown, that the land is well timbered, abundantly covered with herbs and grasses, and valuable for agricultural and residential purposes, all which uses would be destroyed if at the end of appellants' operations, as may well be the case, there should be left nothing but a hole in the ground. Nor does the formulated rule of the law recognize the propriety of any such comparison of values between the surface of the earth and that indefinite extent upwards and downwards the dominion of which, so far as may be, passes with the conveyance of land where the parties do not stipulate otherwise. But where the parties draw a dividing line, the law of the courts, following the logic of the facts of nature, gives first consideration to the ownership of the surface of the earth, the soil, from which the human family draws sustenance and on which it lives and moves, and declares, in the absence of special covenant to a contrary effect, the absolute right to its use and enjoyment, subject only to those rights in the owner of the underlying minerals which are necessarily implied by a severance of the two estates, and which are conceded by appellee in this cause.

This court has considered land as per se property of peculiar value, and has made it the subject of protection against trespasses destructive to its substance without regard to the question whether, in the particular case, it really has any peculiar value or not, just as in cases of contract it is made a subject for specific performance without regard to its quality, use, or value. Where a threatened wrong would destroy the substance of the inheritance, ruin the estate, or permanently impair its future use in the manner in which the owner

[Braun v. Pettyjohn, et al.]

is entitled to use and enjoy it, pecuniary compensation is inadequate, the injury is irreparable at law, and the interference of equity is demanded. In such case, also, the court is indifferent whether the wrongdoer be solvent or insolvent.—*Hooper v. Dora Coal Mining Co.,* 95 Ala. 235, 10 South. 652; 5 Pom. Tq. Jur. § 495.

The demurrer to appellee's bill was properly overruled, and the chancellor's decree will be affirmed.

Affirmed.. All the Justices concur.