## No. 9783.

### BURT *v.* THE ROCKY MOUNTAIN FUEL COMPANY.

Decided May 2, 1921.  No change in opinion on rehearing April 3, 1922.

Action for damages for subsidence of lot caused by coal mining.  Plaintiff nonsuited.

### *Reversed.*

1.  MINES AND MINING—*Duty to Owner of Surface Rights.* Unless there be a contract, express or implied, releasing him from the duty, the owner of coal only, when he mines it, must leave sufficient support to sustain the surface above.

2.  DEEDS—*Grantor Without Interest—Grantee.* The grantee takes nothing by a deed, and is not bound by reservations therein, when the grantor had no right, title or interest in the property described.

3.  REAL PROPERTY—*Conveyance—Omission of Reservation.* Where a conveyance of town property omits one of the reservations contained in the original plat and dedication, the omission must be construed to have been intentional.

4.  EVIDENCE—*Nonsuit.* Evidence reviewed and held sufficient to go to the jury, and to require a defense.

*Error to the District Court of Boulder County, Hon. George H. Bradfield, Judge.*

Mr. O. A. JOHNSON, for plaintiff in error.

Mr. JESSE G. NORTHCUTT, Messrs. DANA, BLOUNT & SILVERSTEIN, for defendant in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

MARY BURT brought suit against The Rocky Mountain Fuel Company for damages for the subsidence of her lot, (lot 7, block 7, Excelsior Place,) in Lafayette, Boulder County, which she claimed was caused by the underground mining of defendant. She was non-suited. The company makes three principal points to justify the non-suit: 1. That the contract under which she acquired her lot contains a reservation of the right to mine on the property and a waiver of damage to be caused thereby; 2. That the dedication of the plat of Excelsior Place reserves the right to mine without liability for damage on account thereof, and subsequent purchasers are bound by such reservation; 3. That there is no evidence of any mining done by the Rocky Mountain Fuel Company under the lot or near enough to cause its sinkage.

In February, 1893, The United Coal Company filed the plat of Excelsior Place and by the dedication declared that it had subdivided the same as shown by the plat and granted to the public a perpetual right of way over the streets, etc.,

"Saving, excepting and reserving to The United Coal Company, its heirs and assigns forever, the right to mine or take out any coal, or other mineral, oil or gas, that may be found beneath the surface of said premises. The intention being to convey the surface ground only. And a farther exception and reservation is made that The United Coal Company, its heirs and assigns shall not be liable or responsible for damages or compensation on account of the

removal of surface support in working the mine beneath. It is hereby stipulated that no spirituous, vinous or malt liquors shall ever be sold or given away as a beverage on the premises herein described. * * *."

In July, 1893, said company gave plaintiff an "agreement of purchase," so called, whereby, in consideration of $100, it agreed "to sell" to her the lot in question "according to the recorded plat thereof, subject to the reservation of coal and other mineral. Also clauses against selling liquor." She paid the $100, and has been in possession ever since.

February 16, 1907, Thomas Burt, plaintiff's husband, divorced about that time, gave her a quitclaim deed of the lot,—"subject to the mineral reservations of all coal beneath the surface, damages for mining coal and the clause against the selling of any liquor as contained in the original agreement from The United Coal Company."

November 21, 1917, The Northern Coal and Coke Company, whose title does not appear, gave to plaintiff a quitclaim deed of the lot in question.

It is conceded that unless there be contract, express or implied, the owner of the coal only, when he removes it, must leave support enough to hold up the surface.

The deeds from the Northern Coal and Coke Company and Thomas Burt need not be considered, because the grantors do not appear by the record to have had any right, title or interest in the lot and plaintiff took nothing by either.

The first point is not well taken. The agreement of purchase expressly refers to the reservations of coal and other mineral and the clauses as to liquor but makes no reference to the immunity from liability for damages caused by mining. The only possible construction to be put upon this is intentional omission.

The second point, then, is already answered. Even if, ordinarily, a reservation of immunity in the dedication of a plat, without more, would be effectual against a subsequent purchaser, a point we do not decide, it cannot be so when such purchaser's title is expressly made subject to

but part of several reservations, because such expression excludes the remainder.

As to the third point: True, there is no direct evidence that the company mined under or near the lot or even within 800 feet of it, but the evidence is that the plaintiff's lot and other land adjacent and near it, sank, that there was, at some time or other, mining, followed by pulling of stumps and other supports, very nearly under the lot. There was here at least enough to go to the jury on the question as to what caused the subsidence. Land does not sink without cause and but one possible cause appears. As to who caused it: It appears that none but defendant The Rocky Mountain Fuel Company did any mining there or near there during the period of sinkage or for some years before, and that subsidence usually occurs within thirty days or so after the removal of support. There is no evidence that sinkage from such cause is ever delayed for as much as a year. This was enough to go to the jury and to put the company on its defense.

Reversed and new trial granted.

MR. JUSTICE TELLER sitting for MR. CHIEF JUSTICE SCOTT.