No. 10,874.

EVANS FUEL CO. ET AL. *v.* LEYDA.

Decided June 1, 1925. Rehearing denied June 22, 1925.

Action for damages. Judgment for plaintiff.

*Affirmed.*

1. MINES AND MINERALS—*Real Property—Rights.* There may be two freeholds in the same body of land, one in the surface and enough of the earth lying beneath to support it, the other in the minerals underneath the surface estate with the right to mine them.

2. *Rights of Surface Owner.* The owner of the surface of land has a right to have the superincumbent soil supported from below in its natural state.

3. *Sale of Land—Reservation of Minerals.* The reservation by a grantor of lands of underlying mineral with right to remove same, standing alone, does not imply immunity from damage for the subsidence of the surface caused by mining operations.

4. *Surface Rights—Reservation of Minerals.* The right to damage the surface of land is the subject of bargain, but a reservation of minerals in a deed of conveyance does not imply a right to injure the surface unless such right is made clear and expressed in terms so plain as to admit of no doubt.

5. DEED—*Reservation of Minerals—Construction.* A deed reserving under-surface mineral rights construed to mean that the grantor in his mining operations will leave or supply such support as will prevent damage to the surface by under-mining.

6. MINES AND MINERALS—*Surface Rights.* The owner of surface of land in the absence of express or implied waiver, has an absolute right to surface support and protection from damage from coal mining operations carried on beneath the surface.

7. *Surface and Mineral Rights.* The owner of the mineral estate in land has a right to the minerals therein, but no right to mine them to the injury of the surface estate without giving security for damages under section 3299, C. L. '21.

8. CUSTOMS AND USAGES—*Contract.* A custom relating to a particular business, in order to be applicable for the purpose of determining the rights of the parties to an agreement, must be uniform, notorious and reasonable.

9. *Wrongful Acts.* The continued practice of a class of persons in committing wrongful acts destructive of property rights of others, cannot give rise to a right to overthrow the statutes or nullify the law of adjudicated cases.

10. *Mining—Surface Support.* A right so to work mines as to injure the surface by removing its subjacent support cannot be claimed by custom, a custom to that effect being unreasonable, repugnant to, and inconsistent with existing law.

*Error to the District Court of Weld County, Hon. Neil F. Graham, Judge.*

Mr. FRED HERRINGTON, Mr. WILBUR F. DENIOUS, Mr. CHARLES H. HAINES, Mr. TOM HERRINGTON, Mr. CASS E. HERRINGTON, for plaintiffs in error.

Mr. THOMAS A. NIXON, for defendant in error.

Mr. JAMES H. PERSHING, Mr. GEORGE L. NYE, Mr. ROBERT G. BOSWORTH, amici curiae.

*En banc.*

MR. JUSTICE WHITFORD delivered the opinion of the court.

EDYTHE E. LEYDA brought suit against Mary Clark Steele and the Evans Fuel Company, for damages for the subsidence of her lots in the town of Frederick, Weld county, which she alleges was caused by the defendants operating a mine underneath her lots, without maintaining proper pillars and support.

The plaintiff in error Steele and two others, as the original joint owners of these and other lands, platted and subdivided the same into lots, blocks, streets and alleys, for residence and business purposes, which became a part of the town of Frederick. In December, 1915, plaintiff in error Steele and her co-owners conveyed the lots in question to defendant in error, with the following reservations in the deed of conveyance: "Provided always, and these presents are upon the express condition, that all coal, gas, oil or all other valuable mineral deposits, in or under said premises already, or which may hereafter be found, are reserved and excepted by the first parties hereto, together with the right of underground access thereto, and with full right to mine, remove and appropriate the same."

Thereafter defendant Steele executed a lease, conveying the coal underneath the lots, with a reservation for royalties, to the Evans Fuel Company, and in pursuance of its terms the company mined and removed the coal, without leaving pillars or support, which caused a subsidence of the surface, to the damage of the plaintiff's residence, garage and other improvements. No question was raised below or here about the buildings contributing to the subsidence of the surface.

The defendants, for an affirmative defense, in substance allege that the uniform custom, for forty years, of mining coal in the Northern coal fields, which embraced these premises, has always been to mine and remove all coal without substituting artificial support for the surface, and that the surface has always subsided following the removal of the coal, and no way has ever been known by which coal could be removed by leaving sufficient support, either

of coal or artificial substitute, to sustain the surface, without incurring an expense several times in excess of the value of the coal, and that it has been economically impossible to mine the coal in the condition that sufficient support should be left to maintain the surface in its natural state, and that this custom was notorious and known to the plaintiff at the time of the execution of the deed to her.

A general demurrer was interposed by the plaintiff to this defense, which was sustained by the court.

Upon the trial of the issues raised by the pleadings, the jury returned a verdict in favor of the plaintiff, and to review the judgment entered thereon, the defendants come here on error.

One of the contentions of the plaintiffs in error is that the reservations in the deed to Leyda gives the right to carry on their mining operations and to remove all the coal, without leaving sufficient support to uphold the surface, and without liability for damages for the subsidence of the superincumbent soil.

It is familiar law that there may be two freeholds in the same body of land, that is to say, a freehold in the surface soil and enough of the earth lying beneath the surface to support it, and a freehold in the minerals underneath the surface estate, with a right of access to mine and extract the minerals. It is also well established, by the great weight of authority, that the owner of the surface has a right to have the superincumbent soil supported from below in its natural state, and that such right is an incident to the ownership of the surface. Washburn's Easements and Servitude, p. 631; 2 Snyder on Mines, §§ 1018, 1020, and 1021. In this state the right to surface support has been long recognized by statute. Section 3299, C. L. 1921, enacted in 1874, reads as follows: "When the right to mine is in any case separate from the ownership or right of occupancy to the surface, the owner or rightful occupant of the surface may demand satisfactory security from the miner, and if it be refused may enjoin such miner from working until such security is given." * * *

This court has held: "that when the surface of land belongs to one, and the coal thereunder to another, the owner of the coal cannot remove it without leaving support sufficient to maintain the surface in its natural state." *Campbell v. Louisville C. M. Co.,* 39 Colo. 379, 381, 89 Pac. 767, 10 L. R. A. (N. S.) 822; *Burt v. Rocky Mtn. Fuel Co.,* 71 Colo. 205, 205 Pac. 741. And in a later case we said: "It is almost universally held that where the ownership of the surface and the mineral is severed, the owner of the mineral may take it out, but must support the surface." *Barker v. Mintz,* 73 Colo. 262, 215 Pac. 534.

In the instant case the owners of the fee granted the surface and reserved the mineral underneath, with the right to extract and remove the coal. Such a reservation, standing alone, does not imply immunity from damage for the subsidence of the surface caused by the removal of the mineral. *Mickle v. Douglas,* 75 Ia. 78, 39 N. W. 198; *Weaver v. Berwind-White Coal Co.,* 216 Pa. 195, 65 Atl. 545.

The right to damage or destroy the surface is clearly a subject for bargain, grant or reservation, and the rule of construction of a reservation of the minerals in a deed of conveyance, is not to imply a right to injure or destroy the surface, unless the right to do so is made clear, and expressed in terms so plain as to admit of no doubt. *Burgner v. Humphrey,* 41 Ohio St. 340; *Catron v. So. Butte Mining Co.,* 181 Fed. 941, 104 C. C. A. 405; *Collins v. Gleason Coal Co.,* 140 Ia. 114, 115 N. W. 497, 118 N. W. 36, 18 L. R. A. (N. S.) 736; *Piedmont & George's Creek Coal Co. v. Kearney,* 114 Md. 496, 79 Atl. 1013; *Silver Spgs. Co. v. Van Ness,* 45 Fla. 559, 34 So. 884; *Jones on Easement,* § 599.

The terms of the reservation in the deed before us import no right to let down or damage the surface. The reservation simply withholds the coal from the grant, with the right of access and to mine and remove the same. In *Campbell v. Louisville Co., supra,* we held that the law implied a covenant to support the surface, and in the absence

of an express covenant the law would read such a covenant into the instrument of conveyance. If so, let us then, frame a covenant, as nearly as we may, expressing it in the phraseology of Justice Gabbert in his opinion in that case, and read the covenant thus framed and the reservation together, as if they were in juxtaposition in the deed itself, so we may the more readily see the exact terms of the deed before us. Such an implied covenant would be in substance as follows: The parties of the first part covenant and agree to and with the parties of the second part, that the party of the first part will so "conduct mining operations" underneath said premises so as "to leave and supply such support as will prevent the superincumbent soil from subsiding," and so "as not to damage the surface by undermining," and will "only remove so much coal as it can get without injury to the surface." Such is the implied covenant which we held the law would read into the instrument of conveyance. It is apparent that the terms of such a covenant cannot be tortured by construction into a covenant of immunity against damages for undermining and letting down the surface.

From what we have said in the former cases, the right to surface support, in the absence of express or implied waiver, is an absolute right, and the owner of the surface estate has the right to demand this support even if, to that end, it becomes necessary to leave every foot of coal untouched under her estate, unless the subjacent owner gives security for damages. Section 3299, C. L. 1921.

Of course the owner of the mineral estate has a right to all the coal under these lots, but they have no right to take any of it to the injury of the surface estate, without giving security for damages. The measure of the enjoyment of their mineral estate must be determined by the measure of their absolute duty to protect the owner of the surface from injury. If the cost of operating the mineral estate is prohibitive, no rule of right arises therefrom to operate it in their own way at the expense of another estate. *Bibby v. Bunch,* 176 Ala. 585, 58 So. 916; *Miles v. Pa. Coal*

*Co.,* 217 Pa. 449, 451, 66 Atl. 764, 10 Ann. Cas. 871.

Plaintiffs in error further contend that the uniform custom of those engaged in mining in the Northern coal fields was to extract all the coal from the mine without leaving any artificial support of the surface, which the plaintiff well knew, and that a deed executed under such circumstances must be construed in the light of the uniform custom then in vogue in that locality. This contention, in the circumstances of this case, cannot be sustained. It is well established by the authorities, that a custom relating to a particular business, in order to be available for the purposes of determining the rights of the parties to an agreement, must be uniform, notorious and reasonable. *Savage v. Pelton,* 1 Colo. App. 148, 27 Pac. 948; *Heistand v. Bateman,* 41 Colo. 20, 91 Pac. 1111. The custom contended for in this case is repugnant to the established law of this state. *Campbell v. Louisville Coal Co., supra; Burt v. Rocky Mtn. Fuel Co., supra;* Section 3299, C. L. 1921. Furthermore, this alleged custom lacks the element of common consent, and therefore is wanting in uniformity. Both of the cases of *Campbell v. Louisville Co., supra,* and *Burt v. Rocky Mtn. Fuel Co., supra,* arose in the Northern coal fields, which conclusively establishes the absence of common consent in that locality. The rights of the parties in the one case were adjudicated in 1906, and in the other in 1920, and they were resolved adversely to the contention made here by the plaintiffs in error. The alleged custom then was not uniform by common consent. To undermine and let down the superincumbent soil owned by another is a legal wrong. The continued practice of a class of persons in committing wrongful acts destructive of the property rights of others, cannot give rise to a right to overthrow the statutes or to nullify the law of adjudicated cases and thereby establish a rule of law contrary to legislative enactments and judicial decisions. The alleged uniform custom has no existence in fact and is unreasonable, because repugnant to and inconsistent with existing law.

Greenleaf says:  A custom or usage is "not  *  *  * permitted to have effect, when they contravene any established general rule of the law."  2 Greenleaf Ev. Sec. 249.

"A right so to work mines as to injure the surface by removing its subjacent support cannot be claimed by custom, a custom to that effect being unreasonable."  18 Am. & Eng. Ency. of Law (2d Ed.) p. 556.

And it has been held that "a custom among miners is not allowed to destroy the surface support by removing the pillars.  Such a custom would be void."  *Railroad v. Mining Co.*, 138 Mo. App. 129, 133.  See also Snyder on Mines, §§ 1018, 1019; *Horner v. Watson*, 79 Pa. 242, 21 Am. Rep. 55; *Hilton v. Granville*, 5 Q. B. 701; *Randolph v. Halden*, 44 Ia. 327; *Coleman v. Chadwick*, 80 Pa. 81, 21 Am. Rep. 93; *Fleming v. King*, 100 Ga. 449, 28 S. E. 289; 3 Ency. Ev. 957.

The answer to the contention of the plaintiffs in error, that the words of the reservation, to mine without surface support, were inserted in the deed in view of the custom alleged in the affirmative defense, and that the reservation must be interpreted accordingly, is that no such custom in fact existed in the Northern coal fields, or could have existed, because of its unreasonableness, in that it was in contravention of established law, and therefore it could not have entered into the terms of the deed as made by the parties.

Finding no prejudicial error in the record, the judgment of the court below will be affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE DENISON dissent.

MR. JUSTICE DENISON, dissenting.

I am compelled to dissent from the majority opinion.

Edythe E. Leyda had a verdict and judgment for damages against the plaintiffs in error for causing her land to sink by mining coal under it.

The facts were that Leyda purchased the premises from

Mary Clark Steele and others by deed purporting to convey the fee upon the following qualifications: "Provided always, and these presents are upon the express condition that all coal, gas, oil or all other valuable mineral deposits in or under said premises already, or which may hereafter be found are reserved to, and excepted by the first parties hereto, together with the right of underground access thereto, and with full right to mine, remove and appropriate the same."

It is admitted by demurrer that all parties to the deed knew that coal underlay the lots conveyed, that the vein was being mined, that it was impracticable to mine it without "pulling the pillars," that is, removing the pillars of coal left as supports when the remainder of the coal is taken out; that because of expense it was impracticable to put in artificial support; that even if the pillars were left they would slack and permit subsidence of the surface; that the value of the coal under it, some 4,000 tons, was many times greater than the price of the land and that in consequence of these things there was and had been in the Northern Fields, so-called, where the premises were, a usage, custom or practice for forty years to mine by excavation of rooms and then removing the supporting pillars, whereupon the surface usually sank somewhat in the course of time.

The plaintiff in error, conceding the well known rule that the owner of mineral apart from the surface, while he may remove it, must support the surface, and that ordinarily a reservation of mineral and the right to mine it by the grantor of the surface gives him no right to mine so as to sink the surface, yet claims that the reservation in question, the facts being known to the parties, must be interpreted as having been made with a view to the usage, according to the elementary rule that a usage is read into every contract made with reference to the subject of the usage (17 C. J. 492; *Heistand v. Bateman,* 41 Colo. 20, 23, 91 Pac. 1111), and that it necessarily follows that the right to mine, reserved in the deed, meant the right to mine ac-

cording to the usage, and that this interpretation is strengthened by the facts above stated, especially the fact that there could be no mining at all except under that interpretation and the conditional clause would have no meaning otherwise, and the fact that if we interpret it otherwise, we should see the grantor, in effect, selling his coal with the surface, value say $4,000, for two or three hundred.

The claim that the usage is illegal because contrary to the rule requiring the miner to support, is both unsound and immaterial. It is unsound because, though cases have so held, yet it is not true that a custom or usage may not be contrary to a rule of common law. If it were true there could be no custom or usage because custom or usage would then be the law. 17 C. J. 471, et seq. Such claim therefore contradicts the very definition of a custom or usage. It must be noted that we have not here a usage to do something forbidden by law, as to steal, deceive or defraud, but merely to violate a private right which might be waived or surrendered. It is immaterial because it cannot affect the question before us, which is whether the right to support has been waived by contract; and it matters not whether the usage is contrary to a rule of law if the rights under that rule of law may be waived and have been waived. It is conceded that the grantor might by proper expressions have provided that the grantee should not have support or have provided immunity from damages for subsidence or both; and if there was a usage, custom, practice, or a mere habit, whatever you choose to call it, which was a part of the contract, it is immaterial whether it was sufficient to override or abrogate the rule of right of support; that is, it is conceded that the right of support could be waived and the question is whether there was a contract waiving it. If there was a habit, usage, custom, whatever you call it, of the surface owners to permit subsidence that —coupled with the necessity of subsidence in order to mine at all—requires us to consider that the contract was made with reference to it, and was a waiver of support and of

damage for subsidence. That is the question before us.

The rule that there cannot be a usage contrary to law does not mean that a known practice is not a part of a contract so as to waive it or surrender the owner's legal rights or to permit the doing of something in violation thereof. An alleged custom to take and convert personal property would no doubt be held void, nevertheless, if there were a practice to take certain personal property at will and a contract were made with reference to such property the contract would have to be interpreted with reference to practice. The meaning of the contract could not otherwise be known.

Even though, therefore, we assume that the rules stated in *Southwest Company v. Big Three,* 138 Mo. App. 129, 119 S. W. 982, and the cases therein cited are sound law, which we have shown they cannot be, it does not affect the decision in this case.

The deed contained the usual covenant for quiet enjoyment and the following exception thereto: "Subject to the above reservations and conditions the above bargained premises in the quiet and peaceable possession of the said party of the first part, her heirs and assigns, the parties of the first part shall and will forever defend."

The covenant was therefore express and expressly qualified. Being express, there could be no implied covenant on that point and it could not extend beyond its qualification. The duty to support the surface is based on the covenant, express or implied, of quiet enjoyment and has no other foundation. There is therefore no ground for the action in this case unless the qualified covenant has been broken. Has it? What have the defendants done that is not permitted under that covenant? They have mined in the only way practicable, but they are permitted to mine and that must mean in a practicable way. The conclusion is plain and inevitable.

Whether the right to support be called implied, absolute, natural or what, if another right is expressed it is gone.

Nobody denies that. If anything—any words—can qualify the right, this deed has done so.

But this court has put the right to damages on the ground of negligence. That is a tort, a breach of right given by law apart from contract. However it cannot be negligence to do what one is permitted to do by contract. The duty to support whether it be one given by contract or by law without contract, may be waived or surrendered. So we come back to the original question whether the deed does waive or surrender it, and that is the vital question in the case. *Burt v. R. M. Fuel Co.*, 71 Colo. 205, 205 Pac. 741, does not control this case because there the usage or practice which is here a part of the contract did not appear and because we construed the contract expressly reserving the right to mine without more as not reserving, but omitting immunity from damages for subsidence. *Barker v. Mintz,* 73 Colo. 262, does not control for the first reason.

The English cases are to the effect that there is no right to let down the surface unless there are clauses in the instrument which expressly or by necessary implication or intendment are inconsistent with the presumption of support. *Butterley Co. v. New Hucknall Co.*, 1 L. R. Ch. Div. 1909, 37, 46. But here there is such a clause. How can it be said that the deed does not by implication and intendment permit subsidence when it reserves a right that requires subsidence, makes the grant subject thereto and grants upon the condition that these things shall be permitted? *Quando aliquid conceditur, conceditur etiam et id sine quo res ipsa non esse potuit.* This rule is violated by the majority opinion.

The English case of *Butterley Co. v. Hucknall Co.,* 99 Law Times Rep. 818, a case based on leases, discusses this question most instructively (Plaintiff in Error's Br., p. 35 et seq.,) e. g. Farwell, L. J.: "It is not a case of qualified working, it is a case of not working at all; and so to read the deeds would stultify the parties." In *Jones v. Consol. Anthracite Co.,* 1 K. B. Div. 1916, pp. 123, 133, the claim

was that the lease giving right to mine gave the right to mine in the only way *used in the district* and this claim was sustained on the strength of the Butterley Case, supra, and the court quotes: "A man who has granted a right to work a mine must be taken to allow its being worked in the only way in which it can be worked whatever the effect on his other property may be."

This case was based on leases, and not on statutes, and seems exactly in point.

These English cases make the same distinction as to previous English cases that we now make as to previous Colorado cases, viz.: that only now has there been evidence that it was impossible to work the mines without subsidence, so we—that only now has it been shown that there was a usage which is part of the contract.*

It is a mistake to say that these cases are based on an English statute. The courts expressly and carefully say that their decision rests on the contract and on the principle *"Quando aliquid"* above quoted.

See *Weldon v. Butterley*, L. R. Ch. Div. 1920, Vol. 1 Chan., at p. 142: "As soon as it is ascertained that there is no possible way of doing so without causing subsidence *there is no room to discuss what implication the Legislature intended."*

Again on page 144: "As is said in so many of these cases the only true criterion is to construe the statute *or* the *contract in question,* and abide by that construction." This case was based on an act of parliament, but in the above discussion was referring to contracts.

The dispute about what these cases mean arises out of the fact that they discuss and rule upon both the statute and the contract of severance. So plaintiff says they are based on a statute and defendant that they are based on contracts. Both are right, but the result is that these cases are directly in point on the effect of a contract such as is

---

* A thing is impossible in law if it cannot be done without unreasonable cost. *Mineral Park Land Co. v. Howard*, 172 Cal. 289, 156 Pac. 460, L. R. A. 1916F, 1.

now before us, and their logic of which the above sugges-
tions give but a faint idea, is to me unanswerable.  There
are many cases in this country more or less to the contrary,
some directly so; some go so far as to say a usage to cause
subsidence is void, but that, in its last analysis, is to say
that the right of support, like life, liberty and the pursuit
of happiness, is a right that cannot be surrendered or
waived which is not the law in this state.  All these cases,
moreover, are based on the old idea that coal could be
mined in some way or other without subsidence, and, when
it is proved as a scientific fact (admitted by demurrer
here) that that cannot be done, *then*, as these English
cases hold, it follows that if either statute or contract gives
the right to mine it gives the right to cause subsidence.

These matters justify the usage, the contract must be
construed with the usage, together they show by necessary
implication and intendment that subsidence was intended
and support was not; this is strengthened by the fact that
another construction would show the grantor destroying
his right to obtain or use $4,000 worth of property for a
few hundred dollars.  The only fair construction of the
deed is that the coal may be mined without liability.

C. L. § 3299 seems to me to be irrelevant to the question
before us.  It relates to rights between the owner of the
surface and the mineral, but it confers no rights which may
not be waived, and the question before us is whether they
have been waived.

The plaintiff in error does not rely on custom or usage
to *control* the *case* but only to interpret the contract.

It is irrelevant to discuss the validity of a custom or
usage to undermine houses.  The question is whether the
right of support has been waived.  Defendants had a right
to undermine and let fall the land in question before the
deed; they had a right to reserve that right from the opera-
tion of the deed.  All knew that mining could not be done
without letting the land fall.  The defendants reserved the
*full* right to mine which by the familiar rule "*quando ali-
quid*" above referred to (a rule which fits a reservation as

well as it does a grant) includes the right to let it fall.
True the right to cause the fall must be shown beyond a
reasonable doubt to be reserved, but what doubt can there
be, reasonable or at all, when the subsidence is essential to
the purpose of the reservation?    An express waiver of
damages for subsidence could not be free from doubt.
*Necessary* implication is as strong as direct expression.

The reservation so construed does not nullify, but quali-
fies the grant, because the full title passes except the coal,
subject only to the right to take it out, and after it is taken,
the unqualified fee simple is in the plaintiff.

I am authorized to say that the Chief Justice concurs in
this dissent.