## No. 12,203.

WHILES *v.* GRAND JUNCTION MINING AND FUEL COMPANY.

Decided November 12, 1929.

Mr. Jacob S. Schey, Mr. Herbert M. Baker, Mr. Thomas C. Smith, for plaintiff in error.

Mr. John S. Macbeth, for defendant in error.

*En Banc.*

Mr. Justce Campbell delivered the opinion of the court.

The plaintiff Whiles is the owner of an undivided eight-ninths interest in certain irrigated lands in Weld county by virtue of divers mesne conveyances from the Union Pacific Railroad Company. The railroad company in its deed of conveyance reserved unto itself and its grantees the minerals and coal underlying the surface of these lands and the right to enter upon the lands and to mine and remove the same. The defendant Grand Junction Mining and Fuel Company owns and operates the Sterling mine adjoining these lands on the north, from which it has been mining coal for several years, and is the lessee of the railroad company of the coal measures underlying the plaintiff's land. This action by

the plaintiff has for its object a writ of injunction to restrain the defendant from entering upon or mining coal from his lands and to enjoin the threatened continuance of such mining by the methods, as the complaint alleges, defendant has employed and will continue to use, whereby sufficient or ample support will not be left to prevent the superincumbent soil from subsiding, or prevent injury to the surface of plaintiff's land, and that the defendant intends to remove all of the coal beneath the surface of plaintiff's land without leaving or providing any surface support therefor, and unless a natural or artificial support be left plaintiff's lands will subside, causing him great and irreparable injury. The defendant fuel company admits that the reservations and exceptions are in the deed of the railroad company, and that it proposes to remove coal from under the surface of plaintiff's land, and that in the grant of the railroad company to plaintiff's grantors the railroad company reserved these rights for itself and its grantees to enter upon the land and to mine coal underlying plaintiff's lands and to remove the same therefrom. There are further allegations in the answer to the effect that defendant intends to mine the coal in a workmanlike manner with due regard to the safety and preservation of the surface.

Upon the issues joined the trial court found that it was impossible or impracticable to mine coal under plaintiff's land in such a way as to afford reasonable and profitable extraction, and at the same time leave sufficient permanent natural or artificial support for the surface. A further finding is that the result of such operations by the defendant will cause subsidence of the surface of approximately 126 acres of plaintiff's land, varying from a maximum of 6 feet at certain points to a minimum of 1 inch at others, but the exact amount of subsidence it is impossible accurately with any degree of certainty to determine at the present time. The court further found that legal relief could be had by the plaintiff only by

successive suits at law for damages, as damages accrue, which would result in the likelihood of a multiplicity of suits, and therefore the only ample and complete relief to be had by plaintiff is in an equitable action. Apparently all material questions of fact in issue were found in favor of the plaintiff.

In the final decree the trial court declined to enjoin the defendant from further mining operations, as permanent relief. Having found that the defendant has the right to mine and remove coal, if it leaves or provides sufficient permanent natural or artificial support for the surface thereof to prevent subsidence of, or injury to, the surface; and as that method is impracticable, as the court found, then the defendant may not mine or remove any coal until or unless it furnishes and gives to plaintiff a statutory indemnifying bond with good and sufficient sureties to be approved by the court in a penal sum of $7,500, which the court found to be the value of the plaintiff's surface rights. The decree which the court entered was that the defendant be restrained and enjoined from mining, extracting or removing coal, unless it shall give and furnish a bond, as just indicated, to provide security to the plaintiff for the payment from time to time of all damages which may accrue to the surface of his lands and crops and improvements which are or may thereafter be thereon, resulting from the subsidence or injury to the surface of the lands by reason of the mining and removal of coal therefrom. The court made the restraining order binding and effective from the date of the decree, but suspended its operation for about two months, and provided that if on or before the expiration of this limited time the defendant does not present to the court the prescribed bond for approval, the restraining order shall remain in full force and effect unless and until such bond be furnished. In other words, the court rendered a decree restraining the defendant from mining and removing coal unless it furnished the prescribed bond, and when such bond was

furnished the defendant would be at liberty to proceed with its mining operations. The case as made, therefore, is whether the plaintiff, as he claims, is absolutely entitled to a decree of injunction under the facts as found by the court, or whether the court has the power to deny injunctive relief, if the defendant will give, as is the case here, a statutory bond to save the plaintiff harmless from any damage caused by the subsidence of the surface of his land.

This court has had occasion to consider similar questions in the cases of *Campbell v. Louisville C. M. Co.,* 39 Colo. 379, 89 Pac. 767, 10 L. R. A. (N. S.) 822; *Burt v. Fuel Co.,* 71 Colo. 205, 205 Pac. 741; *Barker v. Mintz,* 73 Colo. 262, 215 Pac. 534; *Evans Fuel Co. v. Leyda,* 77 Colo. 356, 236 Pac. 1023. Counsel for the plaintiff in error, who was plaintiff below, contends that there is an inconsistency between the Barker case and the Evans Fuel Company case as to some of the questions which are involved in the one now under consideration, and that rightly construed these cases are not authority for the position taken by the defendant. They say that the Barker case held merely, as did the Burt case, where the ownership of the surface and the mineral is severed, the owner of the mineral may take it out but must support the surface; and that the Evans case held that the right of the surface support was absolute; that it was an incident to the ownership of the surface, and that the surface owner might demand this support even if it becomes necessary to leave every foot of coal untouched under the surface estate. We do not think that, so far as any question that is involved here is concerned, we should enter upon a discussion as to whether there is any inconsistency between the Evans and the Barker cases. There will be time enough for that when the exigencies of some case require it.

When the plaintiff acquired his title to the land he took it with knowledge of the fact that his right thereto did not extend downward beyond the seams of

underlying coal. The deed to his remote grantor contained the reservation to mine and remove coal therefrom by the railroad company or its grantee or lessee. In other words, the plaintiff was not acquiring an ordinary common law title to his land, but only to the surface thereof, and his title was not inferior to, but was to be measured and protected, so that the rights of the owner of the underlying coal, which included the right to go upon the land and in a workmanlike manner to mine and remove coal therefrom, would be enjoyed.

■ Under the cases already cited, one removing the coal must furnish support for the surface if that is practicable; or, if not feasible, to furnish the statutory bond to save the surface owner harmless. The trial court in the present instance found, and both parties are in accord, that it was and is impracticable to furnish support that will prevent subsidence. Our statute relating to this matter provides that when the right to mine is in any case separate from the ownership or right of occupancy to the surface, the owner or rightful occupant of the surface may demand security from the miner, and, if it be refused, may enjoin such miner from working until such security is given. In the Evans case, page 361, we said "From what we have said in the former cases, the right to surface support, in the absence of express or implied waiver, is an absolute right, and the owner of the surface estate has the right to demand this support even if, to that end, it becomes necessary to leave every foot of coal untouched under her estate, unless the subjacent owner gives security for damages. Section 3299 C. L. 1921." And again: "Of course the owner of the mineral estate has a right to all the coal under these lots, but they have no right to take any of it to the injury of the surface estate, without giving security for damages. The measure of the enjoyment of their mineral estate must be determined by the measure of their absolute duty to protect the owner of the surface from injury."

Section 3299 applies to the kind of a case now before us. In the Barker case, supra, we said that this section is capable of two constructions: first, that it gives to the owner of the surface a right in addition to his previous equitable rights. The other construction is that the section is restrictive and deprives the surface owner of his remedy by injunction in case of irreparable injury. We gave to the section the interpretation of affording the surface owner a right in addition to the equitable right of injunction which theretofore he possessed. But in the Evans case we said, in referring to the same section as bearing upon the right of a surface owner to a writ of injunction, that such owner has the absolute right to the writ unless the subjacent owner gives security for damages, and we further said, as above quoted, that the owner of the mineral estate has no right to take any coal to the injury of the surface estate without giving security for damages. These expressions, which are the latest that have emanated from us, indicate, as the trial court below said, that it was proper, under the facts of this case, not to make the injunction absolute or permanent, if the owner of the mineral estate furnishes the prescribed bond to save the surface owner harmless. It is true that in the Barker case we said, among other things, that the owner or rightful occupant of the surface may demand security from the miner, and if it be refused, he may enjoin such miner from working until such security is given. This observation indicates that we thought then, as we did later in the Evans case, that although it furnished to the surface owner a right in addition to his previous equitable rights, yet he was not obliged in the first instance to invoke it; but when the owner of the mineral right is willing to, and does, furnish a prescribed bond to save the surface owner harmless, ample relief is afforded to the latter.

We are thus committed to the doctrine that, although the surface owner is not obliged to ask for a bond, nevertheless, if, as in the case in hand, a bond is

offered by the owner of the mineral in a sufficient amount to protect the surface owner, the court may, in the reasonable exercise of its discretion, permit further mining operations by requiring a bond that will, as in this case, cover all damages that the surface owner may suffer. Here the court found that the value of the overlying lands is $7,500, bond for which amount the defendant furnished and which the court approved. Certainly our legislature passed this statute for a bond to save the surface owner harmless and to permit the owner of the minerals to utilize his property; so that the rights of both owners might be properly exercised and enjoyed. The ownership of the underlying coal is just as much a property right as is the ownership of the superincumbent surface. We think it is a fair and equitable remedy which the legislature has provided for the full use by the respective owners of their separate interests in this tract of land.

It may be that hereafter conditions may so change as that a bond in a larger amount should be required of the defendant company. If so, upon a proper showing by the plaintiff, the district court is authorized to entertain any application that he may make for additional or further security. The judgment is affirmed.

MR. JUSTICE BUTLER not participating.